# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DICK PACIFIC/GHEMM, JV,<br>On behalf of W. A. Botting Company,<br>Plaintiff<br><br>v.<br><br><br>THE UNITED STATES<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>No. 05-462C<br>(Judge Baskir) |

## JOINT PRELIMINARY STATUS REPORT

Pursuant to RCFC Appendix A, paragraph 4 and this Court's special procedure order, the parties to this action, by and through their undersigned counsel, respectfully submit the following Joint Preliminary Status Report.

## I. Brief Description Of Factual and Legal Issues

The Government entered into a contract with Dick Pacific/GHEMM JV ("Dick Pacific") on February 19, 2002, to construct the Bassett Hospital Replacement on Fort Wainwright, Alaska. Notice to Proceed was issued on March 14, 2002, and the original contract completion date was June 17, 2006. Dick Pacific is the General Contractor and the W.A. Botting Company ("Botting") is the Mechanical subcontractor.

The Government has issued two solicitations for this project. The first solicitation was for a normal firm fixed-price contract and did not contain an economic price adjustment ("EPA") clause. Botting alleges that it included an estimate for anticipated wage escalation, based upon prior history in the Fairbanks area, in its initial bid. Due to the high prices received from the offerors, the first solicitation was cancelled.

In the second solicitation, the contract type was revised to a fixed-price contract with an economic price adjustment for labor.

The second solicitation contained Federal Regulation ("FAR") clause 52.216-4. See also FAR 16.203-2(a). Botting alleges that this clause informed bidders that they were not to include wage escalation in their bids and they would be compensated separately for any wage escalation costs which might be incurred. Botting alleges that when Botting re-bid the project, it did not include any wage escalation costs, but did include estimated costs for items known as "Other Direct Job Costs." Botting alleges that this category of costs in the estimate was to cover the costs which Botting anticipated it would incur by bringing personal from the lower 48 to supervise and manage the project, including their travel and subsistence.

Due to the last minute crunch at bid time, Botting alleges that it used the same basic bid format for the second bid that it had used on the original bid. In the original bid there was a bid item entitled "ESCAL" at the top of one of the final recap bid sheets. In the original bid, this column contained Botting's labor escalation bid of $305,575.00. Botting alleges that it needed to insert $315,151.00 of specialized personnel cost into its bid. Botting alleges that on the computer it erased the $305,575.00 escalation costs and inserted the $315,151.00 specialized personnel costs. Botting has asserted that in the rebid, it did not change the heading of the column; it still remained as ESCAL from its original bid, even though there was no escalation costs in its second bid.

Botting asserts that when Botting was awarded the subcontract, it prepared its budget. The budget allegedly categorized the $315,151.00 as specialized personnel. Botting asserts that because it had not included any labor escalation in its second bid, there was no budget item for labor escalation.

In Serial Letter No. FTW171B-126, dated July 17, 2002, the Government advised Dick Pacific that all subcontracts in excess of $500,000 would be audited to determine the quantities of labor subject to EPA. In response, Dick Pacific forwarded some initial audit cost

information for Botting. Additional information was forwarded to the Defense Contract Audit Agency over the next several years. On August 19, 2004, in Serial Letter No. FTW171B-1847, the Government notified Dick Pacific that Botting's bid estimate appeared to include escalation for labor costs. Specifically, the Government alleged that lines 160, 161, 217, 218, 274 and 275 of their bid estimate indicated an amount for escalation related to labor hours for lead foreman, journeyman and apprentice.

On October 26, 2004, the Government denied Botting's request for an EPA adjustment, alleging that Botting's bid contained an apparent contingency for labor escalation. The Government alleged that Botting's contention regarding the ESCAL was not supported by their bid estimate and that no other contemporaneous documentation to support Botting's allegation had been provided.

Botting requested a Contracting Officer's Decision on their eligibility for an EPA adjustment. The request was submitted by Dick Pacific in Serial Letter No. 75-2600-0009-01227, dated January 3, 2005, and was certified by Dick Pacific in accordance with the Contract Disputes Act. A final decision denying Dick Pacific's claim was issued on March 11, 2005. A Complaint appealing this decision was filed with the United States Court of Federal Claims on April 11, 2005.

Botting alleges that its actual wage escalation costs are $1,492,106.05 and that is the reimbursement it seeks in this action.

**A. Botting Statement of the Issues**

Dick Pacific and Botting assert that while issues of Federal construction law will be the primary legal issues, the majority of the issues for trial will be factual issues as to the intention of the parties. The factual issues are:

1. Did Botting have a bid item of $305,575.00 for wage escalation in its original bid?
2. Did Botting include $315,151.00 for specialized management and supervision, including costs of travel and subsistence in its second bid?
3. If Botting included $315,151.00 for specialized management and supervision, where would that item be located in the re-bid documents.
4. If Botting included $315,151.00 in the bid column entitled ESCAL where are those costs identified in its budget?
5. Did Botting include any costs of wage escalation in its second bid?

6. Did Botting actually incur compensable labor escalation costs of $1,492,106.00?

**B. The Government's Statement of the Issues**

The Government contends that this case presents essentially a single primary legal issue: can the contractor receive an adjustment under the contract EPA clause if it included the possibility of escalation in its bid costs for the items covered by that clause?

The Government contends that it is clear that Botting, upon whose quote the prime contractor relied in submitting its bid to the Government, included in its quote items clearly identified as escalation for labor hour costs. These items are identified as applying to specific time periods and are apparently calculated by applying a rate to the number of labor hours estimated per given category. The Government asserts that the contemporaneous documents clearly support a determination that contingency for labor cost, or wage rate, escalation was included in its quote to Dick Pacific, who then passed that contingent cost on to the Government. As such, Dick Pacific, on behalf of Botting, should be precluded from recovering on a claim for an adjustment for wage rate increases under the contract EPA clause.

## II. Information Provided Pursuant to Appendix A

### A. Jurisdiction

Plaintiff states that the Court has jurisdiction to consider and decide this action pursuant to 41 U.S.C. § 609(a) and 28 U.S.C. § 1331. Defendant has identified no reason to question the jurisdiction of the Court at this time.

### B. Consolidation

The parties agree that there are no other pending actions that warrant consolidation.

### C. Bifurcation

The parties agree that liability should be bifurcated from quantum.

### D. Deferral of proceeding

The parties agree that there is no reason to defer this proceeding for any reason.

### E. Remand/Suspension

The parties agree that no remand or suspension will be sought.

### F. Joinder

The parties agree that there are no additional parties to be joined in this action.

**G. Dispositive motions**

There are no dispositive motions currently planned for filing, but it is too early in the proceedings to determine if dispositive motions under RCFC 56 may be appropriate.

**H. Relevant Issues**

See "Brief Description Of Factual and Legal Issues", above.

**I. Settlement**

At this time, the parties cannot state whether this case can be settled. The parties will pursue settlement negotiations in good faith as the litigation progresses. The Government does not believe that Alternative Dispute Resolution would be productive at this time, but may re-assess its position at the close of discovery.

**J. Trial**

As stated above, one or both parties may move for summary judgment pursuant to RCFC 56. If dispositive motions are not submitted, of if they are not completely dispositive of this action, the parties anticipate proceeding to trial. Dick Pacific and Botting request that trial take place in Seattle, Washington or in Fairbanks, Alaska. The Government requests that requests that trial take place in Fairbanks, Alaska.

Dick Pacific and Botting request an expedited trial schedule, since it has incurred $1,492,106.00 in escalation costs that were not in its or Fairbanks, Alaska.

**K. Electronic Case Management**

The parties are not aware of any special needs regarding electronic case management.

**L. Other Issues**

The parties are not aware of any other special issues for the Court to address at this time.

## III. <u>Proposed Discovery Plan</u>

The parties intend to conduct simultaneous discovery through interrogatories, requests for admission, requests for production of documents, and depositions. The parties have not agreed upon a discovery schedule.

Dick Pacific and Botting assert that this case will involve very few witnesses and limited discovery. Accordingly, Dick Pacific and Botting propose the following discovery schedule:

| | |
|---|---|
| (1) Exchange of Initial Disclosures | September 30, 2005 |
| (2) Close of Fact Discovery | January 30, 2006 |
| (3) Plaintiff's Expert Report Due | February 28, 2006 |

| | |
|---|---|
| (4) Defendant's Expert Report Due | March 30, 2006 |
| (5) Deadline for Expert Depositions | April 15, 2006 |

Government counsel agrees that the issues in this case are suitable for an aggressive discovery schedule, but asserts that the discovery schedule proposed by plaintiff does not allow for a through exploration of the matters before the Court. Further, counsel for the Government notes that the proposed deadlines are incompatible with his current schedule and, specifically, that he will be unavailable all of April 2006. Accordingly, the Government proposes the following schedule:

| | |
|---|---|
| (1) Exchange of Initial Disclosures | September 30, 2005 |
| (2) Close of Fact Discovery | March 30, 2006 |
| (3) Plaintiff's Expert Report Due | April 30, 2006 |
| (4) Defendant's Expert Report Due | May 30, 2006 |
| (5) Deadline for Expert Depositions | June 15, 2006 |

Pursuant to the Court's order, the parties will attempt to employ stipulations and requests for admissions to the maximum extent possible.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Patrick A. Sullivan
PATRICK A. SULLIVAN

/s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

ROBERT CRICK
Winston & Cashatt, Lawyers
601 West Riverside Avenue
1900 Seafirst Financial Center
Spokane, WA 99201-0695

Attorney for Plaintiff

September 30, 2005

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

Attorneys for Defendant

September 30, 2004

CERTIFICATE OF FILING

I hereby certify that on this 30th day of September, 2005, a copy of the foregoing "JOINT PRELIMINARY STATUS REPORT" and Appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

# INDEX TO APPENDIX


| Document | Pages |
| --- | --- |
| Findings of Fact and Contracting Officer's Decision, FTW171B-2130, dated March 11, 2005 . . . . . . . . . . . . . . . . . . . . | 1-13 |
| Dick Pacific's Claim letter and brief, Contractor Serial Letter No. 75-2600-00009-01227, dated January 3, 2005 (attachments omitted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14-34 |
| Contract excerpt, Section 52.216-4, Economic Price Adjustment – Labor and Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 35-36 |