DEPARTMENT OF THE ARMY
U.S. ARMY ENGINEER DISTRICT, ALASKA
P.O. BOX 6898
ELMENDORF AFB, ALASKA 99506-6898

REPLY TO
ATTENTION OF:

AUG 19 2004

Contracting Division (FTW171B-1847) (415-15j)

SUBJECT: Contract DACA85-02-C-0004, Bassett Hospital Replacement, Fort Wainwright, Alaska; W.A. Botting Baseline Information

Dick Pacific/GHEMM, JV
Attention: Ronald Young, Project Executive
P.O. Box 35490
Ft. Wainwright, Alaska 99703-0490

Dear Mr. Young,

In our review of the baseline information submitted by your subcontractor, W.A. Botting, it appears they have failed to provide sufficient information for consideration of adjustment to labor subject to the Economic Price Adjustment because the proposal data of the firm includes escalation of labor costs. Specifically, lines 160, 161, 217, 218, 274, and 275 of W.A. Botting's submission of baseline information indicate an amount for escalation of labor for specific years of the contract; therefore, W.A. Botting's request for adjustment appears to represent a duplication of these escalation costs.

The premise for inclusion of Contract clause 52.216-4, Economic Price Adjustment- Labor and Material, in the solicitation and subsequent subject contract, was to provide a mechanism for monetary relief to compensate for the uncertainty of stable labor rates over the length of the contract. Federal Acquisition Regulation (FAR) Subpart 16.203-4(c) prescribes the contract clause and FAR Subpart 16.203-2 requires the contracting officer to ensure contingencies are not duplicated and is cited below for your reference:

*A fixed-price contract with economic price adjustment may be used when*

*(i) there is serious doubt concerning the stability of market or labor conditions that will exist during an extended period of contract performance, and*

*(ii) contingencies that would otherwise be included in the contract price can be identified and covered separately in the contract. Price adjustments based on established prices should normally be restricted to industry-wide contingencies. Price adjustments based on labor and material costs should be limited to contingencies beyond the contractor's control. For use of economic price adjustment in sealed bid contracts, see 14.408-4.*

*(a) In establishing the base level from which adjustment will be made, the contracting officer shall ensure that contingency allowances are not duplicated by inclusion in both the base price and the adjustment requested by the contractor under economic price adjustment clause.*

*(b) In contracts that do not require submission of cost or pricing data, the contracting officer shall obtain adequate information to establish the base level from which adjustment will be made and may require verification of data submitted.*

By requesting adjustment to labor rates and by including escalation in the baseline bid this clearly creates a duplicate contingency. Until the Government can be assured that it is not paying for this duplication, payment for W.A. Botting's requested adjustment cannot be made. Please provide an explanation for the escalation included in Botting's baseline bid and a revised adjustment amount to account for and eliminate any duplication.

If you have any questions regarding this matter please feel free to call me at 907-753-2546.

Sincerely,

Claudette M. McDonald

Claudette M. McDonald
Contracting Officer

DICKPACIFIC GHEMM JV

Bassett Hospital Replacement
Fort Wainwright, Alaska
Contract No. DACA85-02-C-0004

August 26, 2004

BASSETT RESIDENT OFFICE
U.S. Army Engineer District, Alaska
P.O. Box 35067
Fort Wainwright, AK 99703-0067

SERIAL NO. 75-2600-00009-01038

Attention: Ken L. Larson, P.E.

Reference: Contract No. DACA85-02-C-0004
Bassett Hospital Replacement, Ft. Wainwright, Alaska

Subject: W.A. Botting – EPA Labor Escalation

Dear Ken:

Dick Pacific/GHEMM, JV is in receipt of the Contracting Officer's letter FTW171B-1847 dated August 19, 2004, in regards to W.A. Botting Company's baseline information submitted under Contract Clause 52.216-4 for reimbursement of labor escalation.

Please find attached W.A. Botting's letter dated August 24, 2004 in response to this reference letter with further explanation, as requested.

Dick Pacific/GHEMM, JV respectfully requests your immediate position on this response to allow final resolution for the reimbursement of this escalation cost by our Mechanical Subcontractor.

If you have any further questions, please contact this field office.

Very truly yours,

DICK PACIFIC/GHEMM, JV

Ronald Young
Project Executive

RY:kji
Enclosure
Cc: K. Moatz
L. Kawamoto
Issue 00193
File

W.A. BOTTING COMPANY
MECHANICAL CONTRACTOR
FULL SERVICE SINCE 1911 wabotting.com

RECEIVED

AUG 25 2004

DICK PACIFIC/GHEMM, JV

August 24, 2004

Mr. Ronald Young
DickPacific/GHEMM, JV
PO Box 35490
Fort Wainwright, AK 99703-0490

Reference: Contract # DACA85-02-C-004
Bassett Hospital Replacement – Ft. Wainwright, Alaska

Subject: EPA Labor Escalation
Army Letter FTW171B-1847

Dear Ronald:

This letter is to respond to the Corps of Engineer's (COE) letter to DickPacific/GHEMM, JV, dated August 19, 2004. The COE in that letter makes the assertion that W.A. Botting Company (WAB) included cost escalation monies in its bid proposal for the same items that WAB has requested contract adjustment under Contract Clause 52.216-4, Economic Price Adjustment-Labor and Material.

The short answer to that assertion is that WAB did not include labor escalation within its baseline bid for the amounts sought in the REA.

The long explanation, which was provided to DCAA during the audit process, is as follows. First you need to understand the nature of the WAB bid sheets. The bid sheets for raw labor calculations for individual work items are based upon estimated work hours times the labor rate in effect at the time of the bid. Those calculations provided the total labor cost of performing the work if it were performed in a time frame where no raises came into effect and with all local personnel. The costs for those lines have not been questioned by the COE but are integral to the explanation here. The bid sheets additionally included the line items referred to by the COE; specifically lines 160, 161, 217, 218, 274, and 275. Those line items were titled "ESCAL". During the bid process the following occurred. The "ESCAL" lines were used in include and additional estimated labor cost which was over and above the cost of raw labor estimates for performing he individual work items. That additional cost estimate was an amount required for the hiring of specialized personnel from outside the local area who would command a pay rate higher than the local scale, as well as an allowance for food, housing, and the like. Clearly, this is a remote area and there are not enough local workers, especially supervisors, to fill all of the positions and WAB was prudent to include such an allowance. The amount for the cost of outside specialists was a cost that WAB would have to incur (and has incurred). The amount was not for factoring in an allowance or the like for the fact that the job would take several seasons to complete. Thus, there was no allowance for labor escalation included in WAB's bid.

20300 Woodinville-Snohomish Road N.E., Ste. 200 • Woodinville, WA 98072
P.O. Box 1200
Phone 425-483-7500 • Fax 425-483-7610
WABOTC*099JA

W.A. BOTTING COMPANY
MECHANICAL CONTRACTOR
SERVICE SINCE 1911 wabotting.com
20300 Woodinville-Snohomish Road N.E. • P.O. Box 1200 • Woodinville, WA 98072
Phone 425-483-7500 Fax 425-483-7610 CTR. REG. NO. WABOTC*099JA

The Government may slap our wrists for not changing the title of the lines, but the fact remains that there is not duplication as suggested by the COE's August 19, 2004 letter.

Simply, WAB has incurred extra labor costs due to increased wage rates which were to be compensated under the EPA clause but which have not been so compensated.

The fact that all of this information has been previously explained in great detail to the DCAA makes WAB concerned that this current information request by the COE is nothing more than a disingenuous attempt to delay payment of entitled monies that are needed to fund the project.

WAB is being forced by the COE's inaction to fund a major portion of this project. Such a condition was never the intent of the Government, as evidenced by the mere fact that the EPA clause was included I the contract. Such a condition was also never anticipated by WAB when bidding the project. To be clear, WAB neither included an amount for the labor escalation requested nor did WAB include an amount for interest on the monies that it has been forced to borrow due to the COE's tardiness in issuing this very important change order.

WAB requests that this issue be escalated under the disputes clause to the next level of decision making.

Thank you for your attention to this matter. Please call if you have any questions.

Sincerely,
W.A. Botting Company

Pete Botting
Chairman and Chief Executive Officer

CC: John Solem, W.A. Botting Company
Robert Crick, Winston Cashatt

| | |
|---|---|
| ☐ PROJECT EXECUTIVE | ☐ SCHEDULER |
| ☐ SUPERINTENDENT | ☐ SR. PROJECT ENGINEER |
| ☐ QC MANAGER | ☐ OFFICE MANAGER |
| ☐ MEP MANAGER | ☐ JV EXECUTIVE COMMITTEE |
| ☐ SAFETY MANAGER | ☐ OTHER |
| ☐ CONTRACT ADMIN. | ☐ OTHER 00193 |

DEPARTMENT OF THE ARMY
U.S. ARMY ENGINEER DISTRICT, ALASKA
P.O. BOX 6898
ELMENDORF AFB, ALASKA 99506-6898

REPLY TO ATTENTION OF:

September 3, 2004

Contracting Division - Military Branch (FTW171B-1870)

Ronald Young, Project Executive
Dick Pacific/GHEMM JV
PO Box 35490
Ft. Wainwright, Alaska 99703-0490

SUBJECT: Contract DACA85-02-C-0004, Bassett Hospital Replacement, Fort Wainwright, Alaska; W.A. Botting Baseline Information

Dear Mr. Young:

Serial No. 75-2600-00009-01038, Subject: W.A. Botting-EPA Escalation, dated August 26, 2004.

In the above referenced serial letter, your subcontractor, W.A. Botting Company, alleges that "the additional cost estimate was an amount required for the hiring of specialized personnel from outside the local area who would command a pay rate higher than the local scale, as well as an allowance for food, housing and the like."

Since none of this information was provided to DCAA during its examination of the bid, we are requesting that Botting provide the calculations of how they computed these additional costs and identify the "specialized" labor positions that they intended to hire for this project. Please provide all of the relevant data for these additional costs so that we can make an determination as to how it impacts the economic price adjustment.

If you have any questions or require additional information, please contact me at 907-753-2546.

Sincerely,

Claudette M. McDonald
Contracting Officer

DICKPACIFIC GHEMM JV

Bassett Hospital Replacement
Fort Wainwright, Alaska
Contract No. DACA85-02-C-0004

September 20, 2004

BASSETT RESIDENT OFFICE
U.S. Army Engineer District, Alaska
P.O. Box 35067
Fort Wainwright, AK 99703-0067

SERIAL NO. 75-2600-00009-01059

Attention: Ken L. Larson, P.E.

Reference: Contract No. DACA85-02-C-0004
Bassett Hospital Replacement, Ft. Wainwright, Alaska

Subject: W.A. Botting – EPA Labor Escalation

Dear Ken:

Dick Pacific/GHEMM JV is in receipt of the Contracting Officer's letter FTW171B-1870, dated September 3, 2004, regarding W.A. Botting's request for EPA labor escalation.

Please find attached W. A. Botting's letter, dated September 16, 2004, in response to this referenced letter with further clarification.

Dick Pacific/GHEMM, JV respectfully requests your immediate review and response to allow final resolution for the reimbursement of the labor escalation costs experienced by our mechanical subcontractor.

If you should have any questions, please call our office (907) 456-3174.

Very truly yours,

DICK PACIFIC/GHEMM, JV

Lon Kawamoto
Contract Administrator

Enclosure
Cc: C. McDonald - U.S. Army Engineer District, Alaska
K. Moatz
R. Young

File: CTO
CE 193

■ P.O. Box 35490, Ft. Wainwright, AK 99703-0490 Ph: (907) 356-3174 / Fax: (907) 356-3176 ■

W.A. BOTTING COMPANY
MECHANICAL CONTRACTOR
FULL SERVICE SINCE 1911 wabotting.com

RECEIVED

SEP 16 2004

DICK PACIFIC/GHEMM, JV

Dick Pacific / Ghemm JV.
P.O. Box 35490
4077 Neely Road
Fairbanks, AK 99701
ATT: Ron Young

Project: **Bassett Hospital Replacement**
**Contract No.DACA85-02-C-0004**
**WAB Project No. 8903, PCO 051**

Subject: Economic Price Adjustment Response to SL-1870

Dear Ron:

This letter is in response to the Corps of Engineer's letter to Dick Pacific/GHEMM, JV, dated September 3, 2004 regarding baseline cost information.

The COE alleges in its letter that Botting did not provide to the DCAA baseline information regarding Botting's estimated costs for the hiring of specialized personnel from outside the local area and for food, housing and the like for personnel hired from outside the local area.

The COE is incorrect in its allegation; Botting did provide that information to the DCAA during the audit process. Botting additionally provided the information to the COE on August 24, 2004 (response to COE SL-1847). Simply, the COE already has the information that it currently seeks and has had it for a long time. Secondly, Botting certified that it has met the requirements of Contract Clause 52.216-4, Economic Price Adjustment-Labor and Material when Botting submitted its Request for Equitable Adjustment. Accordingly, Botting considers this current request to be nothing more than another effort to delay or avoid making payment for compensation which Botting is clearly entitled under the contract.

But in an effort to be as clear and concise as possible, Botting sets forth one last time exactly what was included in its baseline bid and what was not.

First of all, what was not. Absolutely no escalation allowance or contingency was included in Botting's bid for increases in the pay to project installation and supervisory personnel from the rate of pay in effect on bid day.

Now what was included in the line item titled "ESCAL" that has come under so much scrutiny. As stated previously, to both the DCAA and to the COE, that additional cost estimate was an amount required for the hiring of specialized personnel from outside the local area who would command a pay rate higher than the local scale, as well as an allowance for food, housing and the like for personnel that had to be brought in from outside the local area. The amount included within the bid for such costs was a lump sum estimate, based upon years of experience working in the industry and in remote and sparsely populated locations. All calculation sheets for the bid were previously produced to the DCAA. Examples of items included in this category of costs include: the additional wages paid to supervisory and other personnel imported from Seattle and Anchorage and other locations, the cost to house and feed those individuals, the cost of transporting them back and forth between their home base and the jobsite, and other similar costs associated with remote locations.

The costs estimated for these items can be found Botting's bid day package, which was previously submitted to DCAA. The total estimate for those costs was $676,751.00. The amount entered into the project budget during the post bid allocation process for these estimated costs was $680,572.00.

Accordingly, every time an eligible employee has become entitled to an increase in pay from the rates that were in effect on bid day, Botting has paid that delta out of its own pocket. Botting is entitled to be reimbursed for that delta via the EPA specification clause but has not been so compensated due to the protracted process that the COE has inflicted upon us. The amounts paid to employees for the cost of hiring specialists, housing and feeding personnel from outside the local area, and the like has been paid by Botting and has not been included in Botting's compensation request under the REA.

It cannot be made any clearer than it has been presented. As stated previously over and over, Botting did not include labor escalation within its baseline bid for the amounts sought in the subject REA. Botting bid the project as it was directed to do. Only the COE has failed to meet its contractual obligations. Botting requests that the COE get this over with; either issue a change order as the specifications guarantee the government will do or put this issue into the disputes clause so we can go to a forum where we can get this dispute resolved equitably. Botting has been forced by the COE's inaction to fund this enormous cost and that is not fair nor was it the intent of the specifications. *Simply, let's get this issue moving to resolution; NOW.*

Sincerely,
W.A. BOTTING COMPANY

John R. Solem
Project Executive

| | | | |
|---|---|---|---|
| ☐ | PROJECT EXECUTIVE | ☐ | SCHEDULER |
| ☐ | SUPERINTENDENT | ☐ | SR. PROJECT ENGINEER |
| ☐ | QC MANAGER | ☐ | OFFICE MANAGER |
| ☐ | MEP MANAGER | ☐ | JV EXECUTIVE COMMITTEE |
| ☐ | SAFETY MANAGER | ☑ | OTHER CE 193 |
| ☑ | CONTRACT ADMIN. | ☐ | OTHER |