IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DICK PACIFIC/GHEMM, JV, on behalf of W.A. Botting Company, Plaintiff, | No. 05-462C |
| vs. | (Judge Baskir) |
| THE UNITED STATES, Defendant. | |

# SUPPLEMENTAL APPENDIX IN SUPPORT OF PLAINTIFF'S OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Table of Contents


1. Deposition of Madonna Southcott, selected pages pp. 3-4

2. Deposition of Claudette Marie McDonald, selected pages pp. 6-7

3. Deposition of Kevin O. Williams, selected pages pp. 9-10

# Tab 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DICK PACIFIC/GHEMM, JV,
on behalf of W.A. Botting Company,

Plaintiff,

vs.

COPY

THE UNITED STATES,

Defendant.

No. 05-462C

DEPOSITION OF MADONNA SOUTHCOTT
Taken January 31, 2006
Commencing at 9:00 a.m.

Volume I - Pages 1 - 49, inclusive

Taken by the Plaintiff
at
U.S. Army Corps of Engineers
2204 Third Street
Elmendorf Air Force Base
Anchorage, Alaska

Reported by:
Mary A. Vavrik, RMR

differences in interpretation of the contractor and the government?
A I would be guessing. I won't -- I have no answer for that, sir.
Q Okay. Paragraph 2, "Federal Acquisition Regulation (FAR)," which is -- "explains the contracting officer's responsibility is to 'ensure that contingency allowances are not duplicated by inclusion in both the base price and the adjustment requested by the contractor under economic price adjustment clause.'" Is this what we talked about earlier?
A Yes, sir.
Q And this is the basis of the government's authority to deny a contractor escalation, regardless of whether or not he has -- scratch that. I'm talking too much here. That's okay. I got your --
MR. MAGER: If you finish your questions, you are going to give me nothing to do.
MR. SULLIVAN: Well, you don't want me to talk and we miss our airplanes here, do you?
BY MR. SULLIVAN:
Q Okay. Well, I understand your position on that from before. Exhibit No. 20. Have you seen this



document before?
A I'm not sure. If I did, it was peripherally in a meeting.
Q Peripheral --
A I mean just as minutes of a meeting if they had supporting documentation for a position.
Q Okay. Exhibit No. 21.
A Is this a different memo than this, than Exhibit 20?
Q Uh-huh. You are right. It's the same thing.
MR. MAGER: They look the same to me.
MR. SULLIVAN: Okay. Exhibit 21 will be withdrawn, then.
(Off the record.)
BY MR. SULLIVAN:
Q Handing you Exhibit No. 22, have you seen this document before?
A No, sir.
Q Have you had an opportunity to review the W.A. Botting wage escalation claim?
A I did not. I -- I did not review the claim.
Q So I assume that also means that you have not rendered any opinion or assisted in any opinion?
A I would not. That's a contracting officer's decision.



Q Okay. Exhibit No. 23. Based upon your last answers, I assume you had nothing to do with Exhibit 23?
A That's correct.
Q I assume you also have not had anything to do with the evaluation of Exhibit 24?
A That's correct.
Q Exhibit 25. And I assume your answer would be the same for Exhibit 25?
A That's correct.
Q We have already covered Exhibit No. 26, which was the contracting officer's decision. And I believe you said you concurred in that, but had nothing to do with the preparation of it.
A That's correct.
MR. SULLIVAN: I'd like to take about five minutes here. I can go over as much of this as we have got information for. I'd rather have the whole document.
MR. MAGER: Do we know --
MR. SULLIVAN: Let's just take five minutes and see.
MR. VANAGEL: I'll go check on it and see if she found anything.
(A break was taken.)



MR. MAGER: We went back. Document marked Exhibit 17 appears to have come from Ken Larson's files, and in Ken Larson's files there is only that page. While it appears to generally be, at least in my review, substantially the same as document previously marked as 18, they come from different files. So --
MR. SULLIVAN: And is there a second page on the other documents?
MR. MAGER: There is a second page on Exhibit 18, which has already been entered into the record.
BY MR. SULLIVAN:
Q Okay. Just one final line of questioning here. Have you ever been a contracting officer on a project involving this similar labor escalation clause?
A No.
MR. SULLIVAN: Thank you very much.
THE WITNESS: You are welcome very much.
EXAMINATION
BY MR. MAGER:
Q One follow-up question.
A Yes, sir.

# Tab 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DICK PACIFIC/GHEMM, JV,
on behalf of W.A. Botting Company,

Plaintiff,

vs.

THE UNITED STATES,

Defendant.

---

No. 05-462C

DEPOSITION OF CLAUDETTE MARIE MCDONALD

Taken January 31, 2006
Commencing at 10:50 a.m.

Volume I - Pages 1 - 51, inclusive

Taken by the Plaintiff
at
U.S. Army Corps of Engineers
2204 Third Street
Elmendorf Air Force Base
Anchorage, Alaska

Reported by:
Mary A. Vavrik, RMR

Q Whose decision was it to use the wage escalation clause in this contract?
A I believe it was a team decision with the customer, the project manager, and Madonna Southcott; and the contract specialist at that time was Gary. I don't remember his last name.
Q Okay. Have you ever worked on a project where there has been a wage escalation clause in the contract before?
A No, I have not, not prior to Bassett.
Q Have there been any others after Bassett?
A No, there have not.
Q Are there any plans to use that clause under another contract?
A Not to my knowledge. I don't have any plans. It has not -- no.
Q In your opinion, has it been a mistake to have had the wage escalation clause in this contract?
A No.
Q Has it been difficult to administer this particular contract clause?
A Yes.
Q Why?
A The baseline was not submitted by Dick Pacific/Ghemm.

**Tab 3**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DICK PACIFIC

Plaintiff,

vs. Case No. 05-462

UNITED STATES

Defendant.

DEPOSITION OF KEVIN O. WILLIAMS

Taken on behalf of the Plaintiff

March 30, 2006

- - -

BE IT REMEMBERED THAT, pursuant to the Washington Rules of Civil Procedure, the deposition of KEVIN O. WILLIAMS was taken before Valerie Allard, a Certified Court Reporter, #3040, on March 30, 2006, commencing at the hour of 9:45 a.m., the proceedings being reported at 14240 Interurban Avenue, South, Suite 156, Seattle, Washington.



f5db4009-9a2b-4dbc-a331-d5352a3cc366

Page 98

everything I need. If you have anything, Steven, feel free.

EXAMINATION

BY-MR.MAGER:

Q. Just a couple clarifications. About when, can you estimate, did you first become involved with this process of trying to determine the EPA with Botting.

A. I would think specifically with Botting would have been March/April time-frame of '04, I believe.

Q. And were you involved before then generally in any issues with this contract?

A. Not with--

Q. You have to let me finish.

A. Not with Botting specifically. But we didn't know who the other players were. We I say we, I mean DCAA didn't know who all the players were. So it was just Pacific/GHEMM. We did a little research on FAR 216, maybe back in '03 sometime. But other than that, we weren't involved.

Q. Are you personally still involved with, outside of having to give depositions, to these issues?

A. No.

Q. About when did you cease your involvement?

A. My involvement ceased roughly around December '04, and I say roughly. I do remember in '05, either

Page 99

getting some--I got emails of what was going on. And it may have been a specific question that didn't relate to Botting but another subcontractor, somebody might have asked me about him, and I would have given them my comments on that.

Q. And then just a general clarify. We've talked a lot today about the determination, that there was a duplication in Botting's bid, disqualifying them for escalation. Do you have any authority to make those determinations whether or not they'd be disqualified or is it the Contracting Officer who does that?

A. It's the Contracting Officer's role. Our role is strictly advisory.

MR. MAGER. That's all the questions I have. Do you have anything in follow up?

MR. CRICK: Yes.

CONTINUED-EXAMINATION

BY-MR.CRICK:

Q. Let me ask you one thing. Do you know, Kevin, has anybody else been assigned to Botting's particular case or is there nobody assigned at this point?

A. Nobody, as far as I know. There, somebody may be on it, but I don't think so.

Q. Okay.

A. They would have contacted me by now.

Page 100

(Whereupon, at 1:30 p.m, the proceeding was concluded. Signature was reserved.)

Page 101

CERTIFICATE

I, Valerie R. Allard, do hereby certify that pursuant to the Rules of Civil Procedure, the witness named herein appeared before me at the time and place set forth in the caption herein; that at the said time and place, I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; and that the foregoing transcript pages constitute a full, true and correct record of such testimony adduced and oral proceeding had and of the whole thereof.

IN WITNESS HEREOF, I have hereunto set my hand this 3rd day of April, 2006.

________________ ________________

Signature Expiration Date